IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**[1] ALBERTO RODRIGUEZ-CALO,**<br>(Counts 1-12),<br>**[2] DERNIS CASTRO-RIVERA,**<br>(Counts 1-12),<br>Defendants. | **INDICTMENT**<br><br>CRIMINAL NO. 25-407(GMM)<br><br>VIOLATIONS:<br>COUNT 1: 18 U.S.C. § 1349<br>COUNTS 2-3: 18 U.S.C. § 1343<br>COUNTS 4-9: 18 U.S.C. § 1341<br>COUNT 10: 18 U.S.C. § 1028A(a)(1)<br>COUNT 11: 18 U.S.C. § 670(a)(1)<br>COUNT 12: 21 U.S.C. § 331(a)<br><br>Forfeiture Allegations:<br>18 U.S.C. § 981(a)(1)(C) and<br>21 U.S.C. § 2461(c)<br><br>(12 COUNTS) |

**THE GRAND JURY CHARGES:**

**GENERAL ALLEGATIONS**

At all times relevant to this Indictment:

1. The Food and Drug Administration ("FDA") of the United States Department of Health and Human Services ("HHS") regulated the distribution and labeling of all drugs, including animal drugs, shipped or received in interstate commerce through enforcement of the Federal Food, Drug, and Cosmetic Act. 21 U.S.C § 301 et seq. ("FDCA").

2. The FDCA defined a "prescription animal drug" as a drug intended for use by animals other than man that: (A) because of its toxicity, or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, was not safe for use except under the supervision of a licensed veterinarian; or (B) was limited by an approved New Animal Drug Application ("NADA"), a conditionally-approved application, or an index listing, to use under the

professional supervision of a licensed veterinarian, and would be dispensed only by or upon the lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice. 21 U.S.C. § 353(f)(1)(A).

3. Xylazine was FDA-approved as a veterinary prescription drug for use in animals as a sedative and analgesic (i.e., pain reliever). The drug was distributed and available as an injectable in vial form and used in animals pursuant to a valid veterinarian prescription.

4. Under the FDCA, an animal drug, such as xylazine, was misbranded if it was dispensed without a lawful written or oral order of a licensed veterinarian in the course of the veterinarian's professional practice. 21 U.S.C. § 353(f)(1)(C). An animal drug was also misbranded if its labeling failed to bear adequate directions for use. 21 U.S.C. § 352(f)(1).

5. "Adequate directions for use" meant directions under which a layman could use a drug safely for the purposes for which it is intended. 21 C.F.R. § 201.5. "Adequate directions for use" could not be written for prescription animal drugs because, by definition, they required the professional supervision of a licensed veterinarian for use. 21 U.S.C. § 353(f)(1).

6. Prescription animal drugs were exempt from the requirement of adequate directions for use in certain, specific circumstances. *See* 21 U.S.C. § 353(f)(2)(A). For example, if the prescription animal drug was dispensed by a licensed veterinarian and the labeling of the product contained the necessary information regarding dosage, warnings, etc. *See, e.g., Id.;* 21 U.S.C. §§ 353(f)(2)(B)(i), (B)(ii). Wholesale distribution of prescription animal drugs was exempt from the "adequate directions for use" requirement described above if the drugs were in the possession of (1) a person (or his agent or employees) regularly and lawfully engaged in the manufacture, transportation, storage, or wholesale distribution of drugs that were to be used only by or on the prescription or other order of a licensed veterinarian; (2) a retail, hospital, clinic pharmacy, or other person

authorized under state law to dispense veterinary prescription drugs that were to be used only by or on the prescription or other order of a licensed veterinarian; or (3) a licensed veterinarian for use in the course of his professional practice. 21 C.F.R. § 201.105(a)(1)(i)-(iii).

7. Consequently, a prescription animal drug that was distributed to a company not "lawfully engaged" in the wholesale distribution of drugs would not have qualified for an exemption to the "adequate directions for use" requirement and would therefore be misbranded. 21 U.S.C. §§ 352(f)(1); 21 C.F.R. § 201.105(a)(1)(i). Similarly, if the prescription animal drug was in the possession of a company that was not an authorized retail pharmacy or licensed veterinarian, it would also be deemed misbranded for failure to comply with the "adequate directions for use" requirement. 21 U.S.C. §§ 352(f)(1), 353(f)(1); 21 C.F.R. § 201.105(a)(1)(ii)-(iii).

8. Whether a person or company was "lawfully engaged" in wholesale distribution was dependent on, among other things, state licensing requirements. *See generally* 21 U.S.C. § 353(e).

9. Additionally, if a shipment or delivery, or any part thereof, of a drug which was exempt from the requirements of 21 U.S.C. § 352(f)(1) because it met the conditions of the regulation (21 C.F.R. § 201.105) was made to a person in whose possession the drug was not exempt, the exemption granted to the shipment or delivery would have expired at the beginning of that shipment or delivery. The causing of an exemption to expire was an act which resulted in such drug being misbranded. 21 C.F.R. § 201.127.

### Puerto Rico's Regulation of Animal Drugs

10. As outlined above, the FDCA referenced the licensing and legal authority under state law in certain circumstances. Although the FDA regulated the approval and labeling of veterinary drugs, the authority to prescribe, dispense and distribute prescription veterinary drugs in any state,

and the limits regarding that authority, were defined by the respective states. The Defendants' businesses were located in Puerto Rico.

11.  To be "lawfully engaged" in the wholesale distribution of animal drugs in Puerto Rico, a Puerto Rican-based person or company needed authorization and licensing from the Puerto Rico Ministry of Health. *See* PRS ADC SALUD Reg. 8867, Ch. II, ¶ 11 (2016); Ch. III, Art. 1, § 1; Ch. V, Art. 1, § 1. Further, a retail distributor of prescription animal drugs also needed authorization and licensing from the Ministry of Health in order to dispense animal drugs pursuant to a valid veterinary medical order. *Id.* at Ch. II, ¶ 14; Ch. V, Art. 3, § 1.

### Company 1

12.  Company 1 was a Florida corporation with its principal place of business in Doral, Florida. Company 1 was a distributor of veterinary prescription drugs to customers, including to customers in the District of Puerto Rico. Company 1 obtained veterinary prescription drugs from other companies for further distribution. As a wholesale distributor of veterinary prescription drugs, Company 1 was regulated by state and federal authorities.

13.  R.B. was a veterinary drug salesperson for Company 1.

14.  The state of Florida required that any company that sells veterinary prescription drugs have a permit in order to lawfully operate in the state. Company 1 had two permits with the state of Florida that limited to whom they could lawfully sell veterinary prescription drugs. At all times relevant to this Indictment, per Florida law, Company 1 was only allowed to sell veterinary prescription drugs to licensed veterinarians practicing on a full-time basis, to law enforcement personnel for their official duties, for specifically enumerated research purposes that do not apply here, for use in chemical analysis or physical testing for law enforcement activities, or direct to a pet owner based on a valid, written order from a licensed veterinarian.

## The Defendants

15. Pharma-Medical Corp. was a company formed in November 1996 by **[1] ALBERTO RODRIGUEZ-CALO** with its principal place of business in Puerto Rico. Pharma-Medical Corp.'s registration documents did not describe the nature of its business. According to Puerto Rico's Registry of Corporations and Entities, Pharma-Medical Corp.'s business registration was revoked on April 16, 2014, for failure to file reports or pay annual dues.

16. G.A.P.A. Enterprise Inc. was formed on August 2, 2021, by **[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA**. G.A.P.A. Enterprise Inc. allegedly sold agricultural products. On November 12, 2021, **[1] ALBERTO RODRIGUEZ-CALO** was removed as Vice President. G.A.P.A. Enterprise Inc. maintained one bank account with **[2] DERNIS CASTRO-RIVERA,** the President of the company, as an authorized user.

17. Castro Lopez Corp. was formed in January 2016, by **[2] DERNIS CASTRO-RIVERA**. Castro Lopez Corp. allegedly operated a gas station, bakery, mechanic, and tire shop. Castro Lopez Corp. maintained multiple bank accounts with **[2] DERNIS CASTRO-RIVERA,** the President of the company, as an authorized user.

18. D&S Asociados LLC was formed on June 17, 2021, by **[2] DERNIS CASTRO-RIVERA**. D&S Asociados LLC allegedly operated a gas station, tire shop, mini-mart, and inspection center. D&S Asociados LLC maintained multiple bank accounts with **[2] DERNIS CASTRO-RIVERA,** the President of the company, as an authorized user.

19. At all times relevant to this Indictment, Pharma-Medical Corp., G.A.P.A. Enterprise Inc., Castro Lopez Corp., and D&S Asociados LLC were not registered with the Puerto Rico Ministry of Health, Auxiliary Secretary for the Regulation of Public Health (SARAFS) as wholesale

distributor of animal prescription drugs or as a retail distributor of prescription animal drugs, as was required by Puerto Rican law in order to distribute veterinary prescription drugs.

20.     **[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA,** through their companies Pharma-Medical Corp. and G.A.P.A. Enterprises Inc., purchased xylazine, a prescription veterinary drug, from Company 1 in Florida, and had it shipped to an address in Puerto Rico. Between on or about August 20, 2020 and on or about April 27, 2023, the Defendants purchased approximately $1,546,319.64 worth (or 52,573 vials) of xylazine from Company 1.

21.     In order to purchase xylazine from Company 1, **[1] ALBERTO RODRIGUEZ -CALO** texted and called R.B. via WhatsApp, a messaging service that utilizes the internet. Beginning in or around August 2020, **[1] ALBERTO RODRIGUEZ-CALO** communicated with R.B. and exchanged G.C.F.'s veterinary credentials to make it appear that G.C.F. worked for Pharma-Medical Corp. and G.A.P.A. Enterprises Inc.

22.     Various invoices related to xylazine orders placed by **[1] ALBERTO RODRIGUEZ-CALO** showed that the orders of xylazine were billed to Pharma-Medical Corp. and G.A.P.A. Enterprises Inc., in G.C.F.'s name, with G.C.F.'s veterinarian license number and expiration date. The xylazine invoices indicated that the product was shipped to Pharma-Medical Corp. and G.A.P.A. Enterprises Inc. at Mans Los Calo Road, 856 Km. 1.4, Barrazas, Carolina, PR 00986. The shipping information also included a telephone number that was associated with **[1] ALBERTO RODRIGUEZ-CALO**. Beginning in October 2022, G.C.F.'s name and veterinarian license number was also listed under the shipping information for the xylazine orders.

23.     At all times relevant to this Indictment, there was no physical facility at which a licensed wholesale veterinary drug distribution business or retail pharmacy for prescription veterinary drugs

located at the xylazine shipping address, Mans Los Calo Road, 856 Km. 1.4, Barrazas, Carolina, PR 00986.

24.   G.C.F. did not work for G.A.P.A. Enterprise Inc., Pharma-Medical Corp., Castro Lopez Corp., D&S Asociados LLC, **[1] ALBERTO RODRIGUEZ-CALO**, or **[2] DERNIS CASTRO-RIVERA**. Additionally, at no time did G.C.F. authorize the above-listed companies or individuals to order xylazine on his behalf, nor did he ever receive the 52,573 vials of xylazine ordered from Company 1 in his name between August 2020 and April 2023.

## Conspiracy and Scheme to Defraud

25.   It was the purpose of the conspiracy and scheme to defraud that **[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA** engaged in deceptive conduct designed to fraudulently obtain the veterinary prescription drug xylazine by falsely representing qualifications to receive prescription veterinary drugs, and making payments for prescription veterinary drugs that defendants were not legally permitted to purchase, transport, possess, and sell.

26.   It was further part of the conspiracy and scheme to defraud that **[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA** secured possession of large quantities of the veterinary prescription drug xylazine which permitted them to use, transport, and sell to others for financial gain.

## Manner and Means

27.   It was part of the conspiracy and scheme to defraud that **[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA** made it appear that Pharma-Medical Corp. and G.A.P.A. Enterprise Inc. were veterinary drug wholesale companies with a licensed veterinarian on staff, G.C.F., in order to obtain copious amounts of the veterinary prescription drug, xylazine from Company 1. With a veterinarian listed on Pharma-Medical Corp. and G.A.P.A. Enterprise

Inc.'s paperwork, their xylazine orders would receive less scrutiny from state and federal regulators, as well as from Company 1's veterinary drug distributors. In fact, G.C.F. never worked for Pharma-Medical Corp. or G.A.P.A. Enterprise Inc., nor did G.C.F. authorize the Defendants to use his name and credentials to purchase xylazine.

28. It was further part of the conspiracy that **[1] ALBERTO RODRIGUEZ-CALO** used interstate wire communications to communicate with Company 1 about ordering xylazine and to send G.C.F.'s veterinarian license and credentials.

29. It was further part of the conspiracy that G.C.F.'s name and veterinary license was listed on Company 1's invoices for xylazine and on the shipping information.

30. **[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA** caused Company 1 to mail more than 500 packages filled with vials xylazine from Doral, Florida to Puerto Rico through fraudulent pretenses.

31. It was further part of the conspiracy that checks and wire transfers from various bank accounts, including business accounts for G.A.P.A. Enterprise Inc., Castro Lopez Corp., and D&S Asociados were made by **[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA** to Company 1 for xylazine orders. Checks to Company 1 from the various accounts associated with G.A.P.A. Enterprise Inc., Castro Lopez Corp., and D&S Asociados were signed by **[2] DERNIS CASTRO-RIVERA.**

## COUNT ONE

### Conspiracy to Commit Mail and Wire Fraud
### 18 U.S.C. § 1349

32. The allegations in paragraphs 1-31 are incorporated by reference.

33.     Beginning from time unknown, but at no point later than August 2020, and continuing to on or about at least April 27, 2023, in the District of Puerto Rico and elsewhere, the defendants,

**[1] ALBERTO RODRIGUEZ-CALO and [2] DERNIS CASTRO-RIVERA,**

did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with other persons known and unknown to the Grand Jury to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses and representations, and by the omission of material facts, well knowing and having reason to know that said pretenses and representations were and would be false and fraudulent when made and caused to be made and that said omissions were and would be material, and, in so doing, causing interstate wire communications to be made and causing mail to be sent and delivered by a private and commercial interstate carrier, in furtherance of the scheme and artifice to defraud.

All in violation of 18 U.S.C. §§ 1341, 1343, and 1349.

### COUNTS TWO AND THREE

#### Wire Fraud
#### 18 U.S.C. § 1343

34.     The allegations in paragraphs 1-31 are incorporated by reference.

35.     From on or about January 14, 2021 to on or about April 27, 2023, in the District of Puerto Rico and elsewhere within the jurisdiction of the Court, the defendants,

**[1] ALBERTO RODRIGUEZ-CALO and [2] DERNIS CASTRO-RIVERA,**

aided and abetted by each other, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses and representations, and by the omission of material facts, well knowing and having reason to

know that said pretenses and representations were and would be false and fraudulent when made and caused to be made.

### Use Of Wires

36. On or about the dates specified below, in the District of Puerto Rico and elsewhere within the jurisdiction of the Court, the defendants, for the purpose of executing and in furtherance of aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly transmit and cause to be transmitted by means of wire communication certain writings, signs, signals, pictures, and sounds, as described below:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 2 | January 27, 2023 | WhatsApp message exchange between [1] **RODRIGUEZ-CALO** and R.B. |
| 3 | February 7, 2023 | WhatsApp message exchange between [1] **RODRIGUEZ-CALO** and R.B. |

All in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

### COUNTS FOUR THROUGH NINE

### Mail Fraud and Swindles
### 18 U.S.C. § 1341

37. The allegations in paragraphs 1-31 are incorporated by reference.

38. From on or about January 14, 2021 to on or about April 27, 2023, in the District of Puerto Rico and elsewhere within the jurisdiction of the Court, the defendants,

**[1] ALBERTO RODRIGUEZ-CALO and [2] DERNIS CASTRO-RIVERA,**

aided and abetted by each other, knowingly used the mail in furtherance of the scheme to defraud, and thereby violated 18 U.S.C. § 1341. The Defendants knowingly caused to be sent and delivered by the United Parcel Service ("UPS") and other public, private, or commercial interstate carriers, packages containing xylazine obtained by materially false and fraudulent representations and statements, including but not limited to the following packages sent from Company 1 to the Defendants in the District of Puerto Rico:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF PACKAGES |
|---|---|---|
| 4 | February 9, 2021 | 1,440 vials of xylazine mailed from Florida to Puerto Rico, totaling $42,724.80 |
| 5 | November 4, 2021 | 956 vials of xylazine mailed from Florida to Puerto Rico, totaling $29,406.56 |
| 6 | March 17, 2022 | 864 vials of xylazine mailed from Florida to Puerto Rico, totaling $25,056.00 |
| 7 | May 4, 2022 | 864 vials of xylazine mailed from Florida to Puerto Rico, totaling $25,056.00 |
| 8 | September 1, 2022 | 720 vials of xylazine mailed from Florida to Puerto Rico, totaling $20,880.00 |
| 9 | April 25, 2023 | 288 vials of xylazine mailed from Florida to Puerto Rico, totaling $8,352 |

All in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2.

## COUNT TEN

### Aggravated Identify Theft
### 18 U.S.C. § 1028A(a)(1)

39. The allegations in paragraphs 1-31 are incorporated by reference.

40. On or about January 14, 2021 through on or about April 25, 2023, in the District of Puerto Rico, and elsewhere, the defendants,

### [1] ALBERTO RODRIGUEZ-CALO, and [2] DERNIS CASTRO-RIVERA,

aided and abetted by each other, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically, the name and veterinary license number belonging to G.C.F., during and in relation to a felony violation enumerated in 18 U.S.C. §1028A(c), to wit, conspiracy to commit mail and wire fraud, as well as the conspiracy's substantive offenses, knowing that the means of identification belonged to another person.

In violation of 18 U.S.C. §§ 1028A(a)(1), (c)(4), and 18 U.S.C. § 2.

## COUNT ELEVEN

### Obtaining Pre-Retail Medical Products by Fraud
### 18 U.S.C. § 670

41. The allegations in paragraphs 1-31 are incorporated by reference.

42. From on or about January 14, 2021 to on or about April 27, 2023, in the District of Puerto Rico and elsewhere within the jurisdiction of the Court, the defendants,

### [1] ALBERTO RODRIGUEZ-CALO and [2] DERNIS CASTRO-RIVERA,

in and using a means and facility of interstate commerce, did obtain a pre-retail medical product by fraud and deception, to wit: xylazine, which valued over $5,000.

In violation of 18 U.S.C. §§ 670(a)(1), 670(c)(2), and 18 U.S.C. § 2.

## COUNT TWELVE

### Introduction of Misbranded Drugs in Interstate Commerce
### 21 U.S.C. § 331(a)

43. The allegations in paragraphs 1-31 are incorporated by reference.

44. From on or about January 14, 2021 to on or about April 27, 2023, in the District of Puerto Rico and elsewhere within the jurisdiction of the Court, the defendants,

**[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA,**

introduced and caused the introduction, into interstate commerce, of xylazine, a prescription animal drug, that was misbranded in that the drugs' labeling did not bear adequate directions for use of such drugs.

In violation of 21 U.S.C. §§ 331(a), 333(a)(1), and 352(f)(1).

## FORFEITURE ALLEGATION

The allegations contained in Counts One through Eleven of this Indictment are hereby realleged and incorporated by reference for purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 2461(c).

Upon a conviction of the violation of 18 U.S.C. §§ 1349, 1341, 1343, 1028A, or 670, **[1] ALBERTO RODRIGUEZ-CALO** and **[2] DERNIS CASTRO-RIVERA** shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following: $1,546,319.64.

If any of the property described above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (c) has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p); as incorporated by 21 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

_____
FOREPERSON
DATE: October 2, 2025

W. STEPHEN MULDROW
United States Attorney

*[signature]*

Seth A. Erbe
Assistant United States Attorney
Chief, Financial Fraud and Public Corruption Section

*[signature]*

Kyrsten L. Melander
Special Assistant United States Attorney